# 𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

## RICHLANDS FLINT GLASS CO. v. HILTEBEITEL.

### AUGUST 8, 1895.

1. MECHANIC'S LIEN—*Perfecting Lien—Termination of Work.*—A bill filed to enforce a mechanic's lien sufficiently alleges that the lien was perfected before the expiration of thirty days from the termination of the work, when it alleges that the lien was filed as provided for in sections 2475 and 2476 of the Code of Virginia, and the copy of the record of the lien exhibited with the bill shows that a part of the work charged for was done within thirty days of the recordation of the lien.

2. MECHANIC'S LIEN—*Quantity of Land—Description.*—Upon a bill filed to enforce a mechanic's lien, the quantity of land necessary for the convenient use of the building is sufficiently described by reference to an exhibit filed with the bill, which gives an adequate description of the land, and seeking to enforce the lien against the land thus described.

3. CONTRACTS IN WRITING—*Parol Evidence—Custom—Usage of Trade—Estimating Brick Wall.*—Where a written contract is entered into to pay an agreed price per thousand for brick-work, but the contract is silent as to how the number of bricks is to be ascertained, parol evidence may be received to show whether there was any agreement between the parties on the subject, and, if so, what it was; and if there was none, then to show what was the custom of the locality where the contract was made, or the usage of trade, and with a reference to which, in the absence of any special agreement, the parties are to be deemed to have contracted.

Appeal from decrees of the Circuit Court of Tazewell county, pronounced September 7, 1893, April 17, 1894, and August 29, 1894, in a suit in chancery wherein the appellee was the complainant, and the appellant and others were the defendants.    *Affirmed.*

The mechanic's lien sought to be enforced consisted of an account of the complainant against the defendant company, giving the details of the work and the prices charged, and credits for money paid, to which was annexed the affidavit of the complainant, and a statement in the following words and figures, to-wit:

" Virginia :

  Tazewell County, to-wit :

" I, Jacob H. Hiltebeitel, contractor and bricklayer, do hereby declare my intention to claim, and do hereby claim, the benefit of the lien given me by sections 2475 and 2476 of the Code of Virginia, for the sum of $1,008.73, with interest from 1st September, 1892, on the glass factory of the Richlands Flint Glass Company, located at the town of Richlands, in Tazewell county, Virginia, and so much land therewith as shall be necessary for the convenient use and enjoyment and operating the said factory.

" Given under my hand this the 8th day of November, 1892.

" J. H. HILTEBEITEL."

The opinion states the other facts.

*May & May*, for the appellant.

*H. C. Alderson* and *J. H. Fulton*, for the appellee.

RIELY, J., delivered the opinion of the court.

The appellee, who was the complainant in the court below, brought his suit in equity to enforce his mechanic's lien against the glass factory of the appellant company, and the parcel of land on which it was built.

There was a demurrer to the bill, which was overruled, and

this action of the court constitutes the first assignment of
error.

The first ground of the demurrer is that the bill does not
allege that the lien was perfected before the expiration of
thirty days from the time the work on the factory terminated.
This objection is not well taken, as the bill distinctly avers
that the mechanic's lien was filed "as provided for in sections
2475 and 2476 of the Code of Virginia," and it appears
from the copy of the record of the lien, which is filed with
the bill as an exhibit, that the work ran through several
months, and that the last charge in the account is for the
work for the month of October, 1892. The lien was admitted
to record in the clerk's office on November 8, 1892, which was
within the period the lien is required by statute to be
perfected.

Another ground of the demurrer is that the account fails
to show the amount and character of the work, and the prices
charged therefor. An inspection of the account shows the
contrary. The amount and character of the work, the prices
charged therefor, the payments made, and the balance due are
all fully set forth, in compliance with the statute.

Another ground of demurrer is that "the bill does not
specify or describe any land by metes and bounds, nor any
quantity of land upon which the plaintiff claims a lien."
There is filed with the bill as an exhibit, and as a part thereof,
a copy of the mortgage made by the Richlands Flint Glass
Company for the purpose of issuing bonds to raise the money
for the conduct of its business. In this mortgage the parcel
of land on which the factory is built is particularly described
by metes and bounds, and stated to contain two and seven-
tenths acres. The bill seeks to enforce the mechanic's lien
against the factory and this parcel of land on which it was
built, and which the company deemed necessary for the con-
venient use of its factory. The bill clearly designates the

property which the complainant seeks to subject to his lien.

The other ground assigned for the demurrer need not be particularly noticed, as the question it presents is raised, and more properly, by the answer.

The Richlands Flint Glass Company bargained with J. H. Hiltebeitel, the appellee, to do the brick work of the glass factory it proposed to erect, and George McCall, who was then its vice-president, drew up a memorandum of the agreement, which was signed by the appellee. The memorandum merely sets forth the various prices which were to be paid per thousand for laying the brick of the different parts of the factory. It does not specify any mode by which the quantity of brick laid was to be ascertained and settled for. It is wholly silent as to this matter. The difference between the parties as to the method by which the quantity of brick is to be ascertained constitutes the real controversy in this case. The appellant company claims that as the contract does not specify any particular mode, its proper construction is that they are to be ascertained by actual count, and that no evidence can be received to show otherwise, as to do so would be to violate the well-settled rule that parol evidence cannot be received to vary or contradict a contract in writing. The appellee contends, on the other hand, that where a contract for laying brick does not specify any particular mode of ascertaining the quantity, it is to be ascertained by the custom of the locality, or the usage of trade, which, in this case, would be by measuring the work and allowing so many bricks to the cubic foot. If the quantity is ascertained by measurement, which includes the mortar joints and makes no allowance for small openings, and not by actual count, the quantity of brick thus ascertained is necessarily greater.

"Extrinsic evidence," it is said in Browne on Parol Evidence, sec. 57, "is admissible in the construction of a mercantile contract, to show that phrases or terms used in the

contract have acquired, by the custom of the locality, or by the usage of trade, a peculiar signification, not attaching to them in their ordinary use, and this whether the phrases or terms are in themselves apparently ambiguous or not." And again it is stated in the same work (p. 216) that " parol evidence is competent to annex to a contract a custom or usage of the business and locality, known to the parties, or so general and well settled as to be presumed to be known to them, and with reference to which they must be deemed to have contracted."

As the contract in this case contains no stipulation as to the method by which the quantity of brick was to be ascertained for settlement, but is silent, or at least ambiguous, in that respect, parol evidence was admissible to show whether there was any agreement between the parties as to this matter, and, if so, what it was; and, if there was no agreement between them, then to show what was the custom of the locality where the contract was made, or the usage of trade, and with reference to which, in the absence of any special agreement, they are to be deemed to have contracted.

In *Lowe* v. *Lehman*, 15 Ohio St. 179, the contract was to furnish and lay brick at a certain price *per thousand*. The controversy there was as to the proper mode of counting, as in the case at bar. The court held that evidence was admissible to show a custom to estimate the quantity of brick by a measurement of the walls on a uniform rule, based on the size of the brick, and deducting for openings in the walls, but not for chimneys or jambs.

In *Ford* v. *Tirrell*, 9 Gray 401, the contract was to build the wall of an octangular cellar, at the rate of eleven cents per foot. The only question was as to the mode of measurement. It was held that, the agreement as to the compensation being equivocal and obscure, it was competent to prove a local usage of measuring cellar walls in order to interpret

the meaning of the language, and to ascertain the extent of the contract.

*Hinton* v. *Locke*, 5 Hill 437, was an action on a contract by which the defendant had promised to pay to the plaintiff, who was a carpenter, twelve shillings *per day* for every man employed by him in repairing the defendant's house. The parties differed as to how many hours made a day's work ; that is, what should be the measurement of the day. It was held that parol evidence was admissible to show that, by an universal usage among carpenters, ten hours' labor constituted a day's work. So that the plaintiff was entitled to charge one and one-fourth day for every twenty-four hours within which the men worked twelve hours and a half.

In *Walls* v. *Bailey*, 49 N. Y. 464, the plaintiff had contracted to do the plastering work of the defendant's house in Buffalo, at a certain price per square yard. He charged and claimed pay for the full surface of the walls, without deduction for doors, windows, cornices, and base-boards, while the defendant contended that, under the contract, he was only to pay for the plaster actually laid on. Evidence of a custom among plasterers in Buffalo to measure and charge for the entire surface of the walls, without deductions for doors, windows, cornices, and base-boards, was held to be proper.

It is shown by the testimony in this case that at the making of the contract nothing was said as to the manner by which the quantity of brick was to be ascertained. And it is further shown by the testimony that where there is no stipulation as to the mode by which the quantity of brick is to be ascertained, it is to be done according to the custom of the locality and the usage of trade, by measuring the work and allowing twenty-two bricks to the cubic foot. It was also proved that the appellee had previously laid brick on other buildings for the same person who represented the appellant company in making the contract in this case, and that the quantity of

brick was ascertained by measurement, and the appellee settled with accordingly.

The court, therefore, did not err in overruling the objections of the appellant to the parol testimony in the cause, on the ground that it tended to contradict the written contract between the parties, and in holding that the complainant was entitled to have the number of brick in the glass factory laid by contract work estimated and paid for by measurement, computing the same at twenty-two bricks to the cubic foot. And, upon a review of the whole case, we think that the court was right in adopting the report of Commissioner Chapman as the basis of its decree, and overruling all the exceptions taken thereto.

There is no error in the decree of the Circuit Court of Tazewell county, and the same must be affirmed.

*Affirmed.*